**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

**Case No.: 1:26-CV-591**

| | |
|---|---|
| STEPHEN MOORE,<br><br>Plaintiff,<br><br>v.<br><br>DEERE & COMPANY and JOHN DEERE KERNERSVILLE LLC,<br><br>Defendants. | **DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS V, IX AND X OF THE AMENDED COMPLAINT** |

Defendants Deere & Company and John Deere Kernersville LLC, (collectively, "Defendants"[1]) respectfully submit this Brief in Support of their Motion to Dismiss Counts V, IX and X of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. As set forth in more detail below, the Court should dismiss Plaintiff's claims for Family and Medical Leave Act ("FMLA") interference (Count V), common law abuse of process (Count IX), and common law intentional infliction of emotional distress (Count X), due to his failure to state claims upon which relief can be granted.

[1] Although in the Amended Complaint, Plaintiff refers to Defendants in the singular, alleging that at all times "Defendant Deere & Company and John Deere Kernersville LLC operated as a highly unified, single integrated employer under controlling federal standards" (ECF No. 6 ¶3), Defendants reserve the right to address the accuracy of this allegation at the appropriate time.

## STATEMENT OF THE NATURE OF THE MATTER BEFORE THE COURT

Plaintiff's Amended Complaint purports to assert ten causes of action: four involving the religious discrimination and retaliation provisions of Title VII of the Civil Rights Act of 1964 (29 U.S.C. §§ 2000e *et seq.*) (Count I (ECF No. 6, ¶¶276-292); Count II (ECF No. 6 ¶¶293-307); Count III (ECF No. 6 ¶¶308-321); and Count IV (ECF No. 6 ¶¶322-332)); two involving the FMLA (29 U.S.C. §§ 2601 *et. seq.*) (Count V (ECF No. 6 ¶¶333-347) and Count VI (ECF No. 6 ¶¶348-360)); and four involving various doctrines under North Carolina common law (Count VII, wrongful discharge (ECF No. 6 ¶¶361-375); Count VIII, common law false imprisonment (ECF No. 6 ¶¶376-389); Count IX, common law abuse of process (ECF No. 6 ¶¶390-406); and Count X, intentional infliction of emotional distress (ECF No. 6 ¶¶407-419).) However, even with a generous reading of the Amended Complaint, Plaintiff's allegations are insufficient to state claims for FMLA interference (Count V), abuse of process (Count IX), and intentional infliction of emotional distress (Count X). The facts, as alleged with respect to each of these counts, do not allow for a reasonable inference that Defendants engaged in unlawful conduct, thereby mandating dismissal of these Counts with prejudice under Rule 12(b)(6).

## BACKGROUND

Plaintiff was employed by Defendants between August 2022 and April 29, 2025. (ECF No. 6 ¶15.) At all relevant times, Plaintiff worked at the John Deere Kenersville, LLC ("JDK") facility. (*Id.* ¶¶18-19; ECF No. 6-1, p. 5.) Plaintiff's last employment was as a Warehouse Logistics Technician, a job with duties that included "operating a forklift,"

"kit building," and the operation of a "push-button pendant station to operate an overhead crane . . . ." (ECF No. 6 ¶¶18-19.)

Plaintiff alleges that on August 12, 2024, he was questioned by agents of Defendants about "religious bracelets" he was wearing and whether his wearing of the bracelets were in compliance with "company policy" and, further, that on the same day he was "forced" to completely remove the "religious apparel." (*Id.* ¶¶28, 29, 33.) Plaintiff alleges he was told the religious apparel did not comply with Defendants' policy (*id.* ¶29), which states that "loose jewelry . . . which might involve risk of catching or entanglement with machinery, could result in injury due to associated work activities, or is determined to create an unsafe condition as determined by their Supervisor or Safety Specialist shall not be worn. Loose jewelry includes . . . bracelets . . . ." (ECF No. 6-2 at 1.) Plaintiff alleges that these incidents caused him to have an "acute emotional crisis" which included uncontrollable crying, insomnia, and panic attacks, to which he alleges he was eventually diagnosed with "acute Panic Attack and Generalized Anxiety Disorder." (ECF No. 6 ¶¶38, 60, 74.)

Following these incidents, Plaintiff alleges that he took intermittent "LA1" leave and sick leave and that he informed Defendants of "his psychological and physiological responses to the apparel dispute." (*Id.* ¶¶62, 75.) Plaintiff acknowledges in the Amended Complaint that he was provided information regarding the submission of a FMLA leave request to Defendants' third-party leave administrator and that he was approved for said

leave from August 21, 2024, through September 22, 2024. (*Id*. ¶¶80, 85, 88.) Plaintiff does not allege that he sought, was denied, or needed additional leave. (*See generally, id*.)

Plaintiff alleges that during his FMLA leave period "Defendant withheld Plaintiff's updated 'RACF ID' network credentials, effectively locking him out of the internal corporate benefits enrollment portal and blocking him from participating in the global benefits platform transition . . . ." (*Id.* ¶89.) Further, Plaintiff alleges that on October 3, 2024 (more than 10 days after his leave ended) Defendants "executed a complete facilities lockout by deactivating Plaintiff's security badge," (*id.* ¶91), yet Plaintiff acknowledges that on the same day he "was let in the building," (*id.* ¶94).

Once he entered the building, Plaintiff alleges he was immediately taken into an administrative meeting in which he was again asked to comply with the "concealment directive" or face immediate termination. (*Id.* ¶¶94-95, 97.) Plaintiff alleges he complied with the directive and continued his job duties. (*Id.* ¶100.)

Several months following his FMLA leave, on March 12, 2025, Plaintiff alleges that he "discovered that his elected insurance coverage had been modified within Defendant's systems" and that he had intermittent access to the benefits system between March 12, 2025, and March 25, 2025. (*Id.* ¶¶160-63.) Although Plaintiff alleges his benefits were removed, he admits any removal occurred following a company-wide "transit[ion] to a zero-cost option." (*Id.* ¶146.)

Plaintiff alleges that on April 29, 2025, he was required to attend an administrative meeting during which JDK "Human Resource Manager Brian Mosbaugh stated to Plaintiff:

*'I'm bringing you in here today because on April 24th, 2025 at 1:57 pm in my office… you were told to no longer have any communication… with Lindsay Cota… and even after that conversation, at 10:55pm on 4/25/25, you attempted to unwanted contact[sic] with Ms. Cota via Instagram… the plan of action in this case is termination of your employment…'*" (*Id.* ¶¶191, 197) (*emphasis in original*). Plaintiff acknowledges that the same day this meeting occurred, Ms. Cota sought and obtained a Chapter 50C Temporary No Contact Order from the District Court Division of Forsyth County, North Carolina. (*Id.* ¶¶200-01, 204.) Plaintiff's employment with Defendants, by his own admission, terminated April 29, 2025. (*Id.* ¶191.)

Plaintiff filed two charges of discrimination with the EEOC. (*Id.* ¶¶10-11.) On or about October 3, 2024, Plaintiff filed a charge with the EEOC alleging that he had been discriminated against because of his religious apparel and that such actions were retaliatory. (*See* ECF No. 6-1, p. 5 (dated October 3, 2024).) The EEOC ultimately processed Plaintiff's charge on February 6, 2025, and assigned it administrative file number 435-2024-01634. (ECF No. 6 ¶149; ECF No. 6-1, pp. 10-13.) After the completion of the EEOC's investigative process, the EEOC declined to take further action and issued Plaintiff his right-to-sue letter on April 27, 2026. (ECF No. 6 ¶10; ECF No. 6-1, pp. 1-2.)

Plaintiff's second charge was assigned administrative file number 435-2025-01587. (ECF No. 6 ¶11.) The EEOC, likewise, dismissed the charge, and issued Plaintiff a right to sue letter on July 7, 2026. (*Id.*; ECF No. 6-1, pp. 6-7.)

On June 25, 2026, Plaintiff filed his Complaint against Defendants. (ECF No. 1.) However, before serving Defendants with the Complaint, Plaintiff filed his Amended Complaint to include charges related to EEOC charge 435-2025-01587. (ECF No. 6.) After being served with the Amended Complaint and Summons on August 3, 2026 (*see* ECF No. 7), Defendants moved for and received an extension of time to answer or otherwise respond to Plaintiff's Amended Complaint by September 23, 2026, (ECF No. 8; Text Order dated August 14, 2026). Defendants timely filed the instant Motion to Dismiss in response to Plaintiff's Amended Complaint.

## LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint. *See Burgess v. Goldstein*, 997 F.3d 541, 562 (4th Cir. 2021). To survive a motion to dismiss for failure to state a claim, the allegations "'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is **plausible** on its face.'" *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555 (citation omitted). "'[N]aked' allegations–a formulaic recitation' of the necessary elements–'are no more than conclusions' and therefore do not suffice." *McCleary-Evans v. Md. DOT*, 780 F.3d 582, 585 (4th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)). Rather, a claim is facially

plausible only "'when the plaintiff pleads **factual content** that allows the court to draw the **reasonable inference** that the defendant is liable for the misconduct alleged.'" *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678) (emphasis added).

## QUESTION PRESENTED

Should the Court dismiss Counts V, IX, and X of the Amended Complaint when Plaintiff has failed to plead any factual content from which a reasonable inference can be made that Defendants: (a) unlawfully interfered with Plaintiff's FMLA leave; (b) engaged in conduct that can be considered an abuse of process; or (c) participated in any extreme or outrageous conduct?

## ARGUMENT

### I. Plaintiff has not plausibly alleged a violation of the FMLA because Plaintiff has not raised a plausible inference that Defendant interfered with his FMLA benefit or that the alleged interference caused actual harm.

In employment discrimination cases, including those asserting FMLA claims, the "'plaintiff need not plead a prima facie case of discrimination' at the motion to dismiss stage." *Jones v. Baker*, 2023 U.S. Dist. LEXIS 250717, at *5-6 (E.D.N.C. Mar. 30, 2023) (quoting *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (4th Cir. 2020)). Instead "'a plaintiff need only allege facts that permit the court to plausibly infer that her employer interfered with her FMLA rights.'" *Schanes v. Univ. of N.C. Sch. of the Arts*, 2026 U.S. Dist. LEXIS 193241, at *12 (M.D.N.C. Aug. 26, 2026) (quoting *Hines v. Blue Cross & Blue Shield of N.C.*, 2020 U.S. Dist. LEXIS 111084, at *7 (M.D.N.C. June 24, 2020)). "Consistent with the above standards, the pertinent question at the motion to dismiss stage is whether the plaintiff alleges facts that plausibly state a violation of the applicable statute 'above a

speculative level.'" *Jones*, 2023 U.S. Dist. LEXIS 250717, at *6 (quoting *Bing*, 959 F.3d at 617).

To bring a plausible "'interference' claim under the FMLA, an employee must thus demonstrate that (1) he is entitled to an FMLA benefit; (2) his employer interfered with the provision of that benefit; and (3) that interference caused harm." *Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Plaintiff has not done so here because he leaves to speculation whether (1) either defendant interfered with the provision of his FMLA benefits; and (2) if any such interference did occur, that the alleged interference caused him actual harm.[2]

**a. Plaintiff's FMLA interference claim fails as a matter of law because he fails to allege facts sufficient to raise a plausible inference that either defendant interfered with his FMLA benefits.**

Plaintiff alleges multiple incidents that he contends constitute interference under the FMLA: (1) the "RACF ID" portal lockouts; (2) the corporate benefits platform exclusions and "manual insurance modifications"; (3) the operational lockout and deactivation of "Plaintiff's facility access credentials;" (4) conditioning Plaintiff's reinstatement upon participation in an administrative meeting; and (5) "altering his corporate data and resetting his official company hire date to January 1, 2025." (ECF No. 6 ¶¶335, 339-40, 342-45.)

[2] Defendants do not dispute that Plaintiff was entitled to FMLA leave or that he received FMLA leave from August 21, 2024, through September 22, 2024. Thus, element one is not in dispute.

"Actionable interference exists where the employer impedes, restrains, or denies the exercise of any rights protected [by] the FMLA." *Reed v. Buckeye Fire Equip.*, 241 Fed. Appx. 917, 924 (4th Cir. 2007) (citing 29 C.F.R. § 825.220(a)). "An employer's conduct may constitute interference with an employee's FMLA rights if it would have a chilling effect and would discourage employees from exercising their FMLA rights." *Fortune v. Gaylor Elec., Inc.*, 2020 U.S. Dist. LEXIS 117687, at *9 (W.D.N.C. May 28, 2020) (quotation and citation omitted).

District Courts in the United States Court of Appeals for the Fourth Circuit have held that incidents that occur following a plaintiff's FMLA leave do not constitute interference and are more accurately labeled as an FMLA retaliation claim. *See, e.g.*, *Murrell v. Prysmian Cables Sys. USA, LLC*, 2026 U.S. Dist. LEXIS 139140, at *8–9 (E.D.N.C. June 23, 2026) ("Because plaintiff's complaint does not allege that she was denied any FMLA leave, but rather that she was provided leave and was terminated shortly upon return, plaintiff has not satisfied the second element of an interference claim. Moreover, the cause of action plaintiff attempts to assert through her FMLA interference claim is preserved in her FMLA retaliation claim."); *Snipes v. Sw. Va. Reg'l Jail Auth.*, 350 F. Supp. 3d 489, 494-95 (W.D. Va. 2018) (finding that termination in close proximity to the return from FMLA leave plausibly alleges a claim for FMLA retaliation rather than a FMLA interference claim).

Here, Plaintiff does not allege that either defendant at any time denied or impeded his right to FMLA leave. (*See generally* ECF No. 6.) Rather, Plaintiff cites various actions

taken by Defendants, many of which occurred after his FMLA leave expired, and leaves to conjecture how any of these actions interfered with his ability to apply and receive FMLA leave or discouraged him (or any other employee) from applying for FMLA leave. The alleged corporate benefits platform exclusions and "manual insurance modifications"; the operational lockout of the building; the conditioning of Plaintiff's reinstatement upon participation in an administrative meeting; and the purported resetting of his official company hire date to January 1, 2025, not only occurred subsequent to his FMLA leave, but leave to guesswork how each adversely affected a future application for FMLA leave.

According to Plaintiff's Amended Complaint, the operational lockout and the administrative meeting occurred on October 3, 2024. (*Id.* ¶¶91, 94.) However, Plaintiff's FMLA leave was only approved from August 21, 2024, through September 22, 2024. (*Id.* ¶88.) Further, Plaintiff alleges that he discovered his elected insurance coverage had been modified on March 12, 2025, and that he had intermittent access to his account between March 12, 2025 and March 25, 2025, yet makes no claim that this impacted his ability to apply for FMLA leave. (*Id.* ¶¶160-63.) Lastly, the alleged modification of his hire date occurred sometime "following" his supplementation of an "EthicsPoint disclosure" on November 23, 2024, yet there is no allegation from plaintiff that he sought or needed FMLA leave after this date. (*Id.* ¶¶139-141.) Accordingly, these actions cannot form the basis of an interference claim not only because all of these events occurred subsequent to Plaintiff's FMLA leave, but also because there is no allegation from plaintiff that any of

these actions prevented him from obtaining additional FMLA leave or discouraged from applying for additional FMLA leave to which he was entitled.

Further, Plaintiff's allegations that Defendants interfered with his FMLA leave by conditioning his reinstatement upon participation in an administrative meeting is insufficient as a matter of law to constitute interference. At the meeting, Plaintiff was asked to return to the same position with the same concealment directive that he had been given prior to taking FMLA leave. (*Id.* ¶¶96-97.) Defendants did not mandate any new directives. (*Id.*) District Courts in the Fourth Circuit have held that a plaintiff is only entitled to be restored to the same employment position that they held prior to taking leave and are not entitled to anything further. *See Schanes*, 2026 U.S. Dist. LEXIS 193241, at *16 ("[T]he FMLA does not provide a basis for a claim for any benefit or accommodation, other than return to the position the employee left, which in this case would involve returning Plaintiff to her position, workspace, and duties that she had prior to taking leave. Any obligation to change the location or conditions of Plaintiff's workspace or duties would not arise from the FMLA[.]"); *see also Boone v. Bd. of Governors of the Univ. of N.C.*, 2018 U.S. Dist. LEXIS 54310, at *18 (M.D.N.C. Mar. 30, 2018) ("UNC did not violate the FMLA when it failed to reinstate Plaintiff following the results of her mental health evaluation showing that she was unfit to return to work."); 29 U.S.C.S. § 2614(3)(B) ("Nothing in this section shall be construed to entitle any restored employee to . . . any right, benefit, or position of employment other than any right, benefit, or position to which the employee would have been entitled had the employee not taken leave.").

Lastly, even though the "RACF ID" portal lockout allegedly occurred during Plaintiff's FMLA leave period, it does not rise to the level of interference. *Compare Hines*, 2020 U.S. Dist. LEXIS 111084, at *9-10 (dismissing an interference claim when the plaintiff was called into the office during her leave because the plaintiff did not "allege any facts making it plausible that the alleged calls from her supervisor actually encouraged her to cut short her FMLA leave or discouraged her or any other employee from asserting an FMLA right to which they were entitled"), *with Jones*, 2023 U.S. Dist. LEXIS 250717, at *13-14 (finding the plaintiff plausibly alleged a claim for interference when "[d]efendant questioned the credibility of her need to take leave, . . . denied her previously approved December leave, . . . [and warned plaintiff] that it would not be good for her if they ever had to have a conversation about missing work again." (cleaned up)). The incident of the "RACF ID" portal lockout does not rise to the level of having a "chilling effect" and Plaintiff does not plausibly allege that this incident discouraged him or others from exercising their FMLA rights.

Simply put, the main concern underlying an interference claim is whether the plaintiff is allowed to take the leave to which they are entitled. *See, e.g., Bigelow v. Syneos Health, LLC*, 2020 U.S. Dist. LEXIS 155791, at *7 (E.D.N.C. Aug. 27, 2020) ("Syneos cannot interfere with Bigelow's FMLA leave if she has taken the FMLA leave that she was entitled to take." (collecting cases)); *Hines*, 2020 U.S. Dist. LEXIS 111084, at *7-8 ("This allegation fails to state a claim for interference because employees, like Plaintiff, who apply for and receive FMLA leave . . . 'have not been denied their FMLA rights; instead, they

have received all the benefits to which they are entitled.'" (quoting *Snipes*, 350 F. Supp. 3d at 494)). As stated above, Plaintiff's Amended Complaint asserts that FMLA leave was requested, was approved, and was taken by Plaintiff from August 21, 2024, through September 22, 2024, and he does not allege he needed or was denied any additional leave. (*See* ECF No. 6 ¶¶85, 88, 91.) Accordingly, Plaintiff has failed to raise a plausible inference that there was any interference with his FMLA leave and Count V of his Amended Complaint should be dismissed with prejudice.

**b. Plaintiff's FMLA interference claim also fails as a matter of law because he fails to raise a plausible inference that any alleged interference caused him harm or prejudice.**

As noted above, "[t]he FMLA 'provides no relief unless the employee has been prejudiced by the violation.'" *Vannoy v. FRB of Richmond*, 827 F.3d 296, 302 (4th Cir. 2016) (quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)). "Prejudice exists where an employee loses compensation or benefits by reason of the violation; sustains other monetary loses as a direct result of the violation; or suffers some loss in employment status remediable through appropriate equitable relief." *Reed*, 241 Fed. Appx. at 924 (cleaned up).

District Courts in the Fourth Circuit have consistently held that some prejudice or harm must be alleged to survive a motion to dismiss. *See Fortune*, 2020 U.S. Dist. LEXIS 117687, at *14 ("Because there has been no interference, there can be no resulting harm and, practically, there was none in this case; Plaintiff was apparently paid his full salary for the week at issue."); *West v. J.O. Stevenson, Inc.*, 164 F. Supp. 3d 751, 768 (E.D.N.C. 2016)

(“To properly allege harm under the FMLA, a plaintiff must provide facts demonstrating his entitlement to lost wages, salary, or employment benefits; in addition, a plaintiff may satisfy the ‘harm’ element by alleging facts demonstrating his entitlement to equitable relief.”); *Wilson v. Nash Edgecombe Econ. Dev., Inc.*, 2020 U.S. Dist. LEXIS 171269, at *46 (E.D.N.C. Sep. 18, 2020) (“[P]laintiff Hunt’s alleged demotion never took effect; therefore, plaintiff fails to plausibly allege the third element of an interference claim – that is – that the alleged demotion caused her harm.” (footnote omitted)); *Howell v. Coca-Cola Bottling Co. Consl.*, 2026 U.S. Dist. LEXIS 159403, at *9 (E.D.N.C. July 17, 2026) (“The plaintiff alleges she returned to work on her own terms, which undermines any claim of prejudice she makes against the defendant.” (internal citations omitted)).

Like the plaintiffs in the above cited cases, Plaintiff here fails to allege in his Amended Complaint any harm or prejudice that occurred as a result of the “RACF ID” portal lockout, the only alleged incident that occurred during his FMLA leave. Rather, Plaintiff states in conclusory fashion that “Plaintiff has suffered and continues to suffer significant economic damages, including a substantial loss of income, loss of employment benefits, and other direct financial losses.” (ECF No. 6 ¶347.) Indeed, a close review of the Amended Complaint leads to a conclusion that the only plausible inference that can be made in this regard is that Plaintiff was temporarily locked out of his access to the “RACF ID” portal while he was out on FMLA leave, that at some time following his leave he obtained access to the portal, and that any removal of benefits occurred once Defendants transitioned to a zero-cost option. In his Amended Complaint, Plaintiff admits that on

March 12, 2025, "Plaintiff discovered that his elected insurance coverage had been modified within Defendant's systems." (*Id.* ¶160.) However, Plaintiff also admits that his benefits were "removed once Defendant transitioned to a zero-cost option," (*id.* ¶146), leaving to guesswork how this transition is causally connected to his exercise of his FMLA rights.

Because Plaintiff has failed to plausibly allege any action taken by Defendants that prevented or discouraged him from taking any FMLA leave to which he was entitled, and because he has failed to plead any actual harm from the non-existent interference, Plaintiff has failed to state a claim upon which relief can be granted for FMLA interference and Count V of his Amended Complaint should be dismissed with prejudice.

## II. Plaintiff's abuse of process claim fails as a matter of law because he fails to allege facts sufficient to raise a plausible inference that either Deere & Company or JDK willfully and improperly participated in a legal process in furtherance of an ulterior motive.

Under North Carolina law, a plausible claim for abuse of process requires allegations from which a reasonable inference can be made that: (a) the defendant "had an ulterior motive to achieve a collateral purpose not within the normal scope of the process used"; and (b) the defendant "committed some act that is a 'malicious misuse or misapplication of that process *after issuance* to accomplish some purpose not warranted or commanded by the writ.'" *Pinewood Homes, Inc. v. Harris*, 184 N.C. App. 597, 602 (2007) (emphasis in original) (quoting *Stanback v. Stanback*, 297 N.C. 181, 200 (1979)). The first element is satisfied through allegations the action was "initiated by defendant or used by

him to achieve a collateral purpose not within the normal scope of the process used." *Stanback*, 297 N.C. at 201. The second element is satisfied through allegations that "once the prior proceeding was initiated, the defendant committed some willful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter." *Id.* In other words, "'[t]here is no abuse of process where it is confined to its regular and legitimate function in relation to the cause of action stated in the complaint.'" *Id.* (quoting *Finance Corp. v. Lane*, 221 N.C. 189, 196-97 (1942)).

Here, in Count IX of the Amended Complaint, Plaintiff alleges the pursuit of a Complaint for No-Contact Order for Stalking or Nonconsensual Sexual Conduct (more commonly known as a 50C No-Contact Order) by his former manager Lindsey Cota constitutes an abuse of process.[3] (*See* ECF No. 6 ¶¶390-406.) Plaintiff then seeks to attribute to Defendants the actions taken by Ms. Cota in her individual capacity as part of that proceeding, without alleging that either defendant expressly authorized Ms. Cota to pursue said actions, that her doing so was within the scope of her job duties as a Manager at JDK, or that either defendant subsequently ratified her actions. (*See id.*) For these reasons alone, Plaintiff's claim for abuse of process should be dismissed for failure to state a claim

[3] Attached hereto as Exhibit A is a certified copy of the entire case file for 25CVD2735, cited by Plaintiff in the Amended Complaint (ECF No. 6 ¶253.) Defendants submit that because Plaintiff has referenced portions of these documents in his Amended Complaint and the documents are public records, their entire contents can be considered as part of a Rule 12(b)(6) Motion to Dismiss. (ECF No. 6 ¶¶195, 201, 204, 229, 231, 236-38, 240-53, 393.) *See Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151, 157 (4th Cir. 2023) ("[A] court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment." (*citing Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

against Defendants for which relief can be granted. *See generally B.B. Walker Co. v. Burns Int'l Sec. Servs., Inc.,* 108 N.C. App. 562, 565-66 (1993) (setting forth the requirements for successfully pleading a tort claim alleging a principal should be liable for the wrongful acts of its agent).

These deficiencies notwithstanding, Plaintiff has not alleged and, therefore, leaves to speculation the committing of any willful act by Ms. Cota, Deere & Company, or JDK as part of the 50C No Contact proceeding that was not "confined to its regular and legitimate function" in relation to the proceeding. The complaint seeking the 50C No Contact Order was filed by Ms. Cota on April 29, 2025. (ECF No. 6 ¶¶191-204; Exhibit A at 18-20.) In it, Ms. Cota sets forth the factual basis for her request citing several specific times where Plaintiff "has <u>repeatedly</u> made attempts to access me despite multiple requests not to," all culminating in a letter left under her office door on April 24, 2025, and a "friend request" made through Instagram on April 25, 2025. (Exhibit A at 20) (underline in original). Ms. Cota further notes in the 50C Compliant, "I have been happily married for nearly 24 years and <u>NEVER</u> expressed otherwise." (*Id.*) (emphasis in original). Plaintiff nowhere in his Amended Complaint alleges the allegations made by Ms. Cota in her 50C No Contact Complaint were inaccurate or improper or that the allegations did not support the findings set forth in the Temporary No Contact Order. (*See generally* ECF No. 6; Exhibit A at 16-17.)

Plaintiff goes on to allege in the Amended Complaint that during the course of the proceedings "local counsel" for Defendants: (a) appeared at "the second scheduled

hearing" and "entered a general appearance on the record"; (b) directed that "all discovery demands be served directly upon his office, and then secured a continuance"; (c) inquired of his attorney whether Plaintiff "*would be interested in putting all of this behind but agreeing to a mutual no-contact agreement"*; and (d) later informing his attorney that Ms. Cota "*feels the message has been sufficiently sent . . . that he is not to have any contact with her and, therefore, will be moving to dismiss the 50C."* (*Id*. ¶¶241-42, 246, 248-49, 251) (emphasis in original). Plaintiff then alleges "this communication demonstrates that Defendant maintained the state court Chapter 50C action to leverage a mutual 'no-contact' agreement, and that Defendant voluntarily dismissed the state litigation immediately following Plaintiff's formal discovery demands." (*Id*. ¶252.) However, Plaintiff does not identify how any of these actions are a "misuse" let alone a "malicious misuse" of the 50C process. (*See generally id.*)

The deficiencies in Plaintiff's abuse of process allegation are similar to the deficiencies that were present in *Stanback*. In that case, the plaintiff filed an abuse of process claim alleging her husband-defendant's filing of a suit against the I.R.S. and naming her as a codefendant was '"to harass, embarrass and annoy the plaintiff . . . and to cause her to forego her legal rights and remedies."" *Stanback*¸ 297 N.C. at 199-200. In affirming the trial court's dismissal under Rule 12(b)(6), the North Carolina Supreme Court noted the plaintiff's "complaint fails, however, to allege that defendant committed any willful act ***not proper*** in the regular course of the proceeding once he initiated the suit against her." *Id.* at 201. (emphasis added).

Just like the plaintiff in *Stanback*, Plaintiff has not identified any action taken by either defendant that was "not proper" to the 50C proceeding, thereby warranting the dismissal of his common law abuse of process claim with prejudice. *Compare, Seguro-Suarez v. Key-Risk Ins. Co.*, 261 N.C. App. 200, 213-14 (2018) (holding trial court properly denied dismissal of plaintiff's abuse of process claim under Rule 12(b)(6) where the plaintiff alleged defendants assisted in the issuance of warrants for his arrest in a criminal proceeding and then after said issuance attempted to use those proceedings to recover workers' compensation benefits defendants were legal obligated to pay pursuant to an Opinion and Award entered in a collateral proceeding). Accordingly, because Plaintiff has neither plausibly alleged that Defendants undertook the 50C proceeding against Plaintiff nor that Defendants undertook any action not proper to the 50C proceeding, Plaintiff's Count IX for abuse of process fails as a matter of law and should be dismissed with prejudice.

### III. Plaintiff's intentional infliction of emotional distress claim fails as a matter of law because he fails to allege facts sufficient to raise a plausible inference that Defendants engaged in extreme and outrageous conduct.

To state a valid claim for intentional infliction of emotional distress, a plaintiff must allege "(1) extreme and outrageous conduct, (2) which is intended to cause and does cause (3) severe emotional distress to another." *Dickens v. Puryear*, 302 N.C. 437, 452 (1981). "'It is a question of law for the court to determine, from the materials before it, whether the conduct complained of may reasonably be found to be sufficiently outrageous as to permit recovery.'" *McKinney v. Cleveland Cnty. Bd. of Educ.*, 2020 U.S. Dist. LEXIS

217255, at *12 (W.D.N.C. Nov. 19, 2020) (quoting *Hogan v. Forsyth Country Club*, 79 N.C. App. 483, 490 (1986)). "'Conduct is extreme and outrageous when it exceeds all bounds usually tolerated by a decent society.'" *Cooper v. Smithfield Packing Co.*, 724 Fed. Appx. 197, 201 (4th Cir. 2018) (quoting *Shreve v. Duke Power Co.*, 85 N.C. App. 253, 257 (1987)).

"A plaintiff must plead with specificity such shocking and outrageous conduct by the wrongdoer." *Id.* "This standard excludes a great deal of conduct that is undoubtedly very bad and is properly considered reprehensible." *McKinney*, 2020 U.S. Dist. LEXIS 217255 at *13 (quotation and citation omitted). "'[P]laintiffs must necessarily be expected and required to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind.'" *Id.* (quoting *Bonham v. Wolf Creek Acad.*, 767 F. Supp. 2d 558, 572 (W.D.N.C. 2011)). Overall, "'[w]here a plaintiff's complaint fails to allege facts sufficient to set forth extreme and outrageous conduct, the [intentional infliction of emotional distress] claim is subject to dismissal pursuant to Rule 12(b)(6).'" *Id.* at *12-13 (quoting *Bonham*, 767 F. Supp. 2d at 572).

Here, Plaintiff's allegations of intentional infliction of emotional distress stem from his employment discrimination claims. Generally, "North Carolina courts have been extremely reluctant to find actionable [intentional infliction of emotional distress] claims in the employment context, and termination, allegedly in violation of federal law alone, does not necessarily constitute extreme and outrageous conduct under North Carolina law." *Efird v. Riley*, 342 F. Supp. 2d 413, 427 (M.D.N.C. 2004). "Furthermore . . . acts of

discrimination are not necessarily 'extreme and outrageous.'" *Id.* Therefore, "'[I]t is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress.'" *Payne v. Nat'l Jewelry & Pawn, Inc.*, 2025 U.S. Dist. LEXIS 168249, at *15 (M.D.N.C. July 28, 2025) (quoting *Thomas v. Northern Telecom, Inc.*, 157 F. Supp. 2d, 627, 635 (M.D.N.C. 2000)).

Plaintiff has alleged that the conduct underlying the intentional infliction of emotional distress claim includes: (1) the security badge lockout; (2) a non-consensual confinement; (3) an arrest threat during termination; (4) manufactured state court litigation; (5) post-termination isolation and secrecy mandates; and (6) threats of sanctions and attorney fees. (ECF No. 6 ¶414.) Similar allegations have failed to rise to the level of "extreme and outrageous" conduct under the strict requirements in the context of employer-employee relationships. *See, e.g., Stephenson v. Carolina Physicians Network Inc.*, 2021 U.S. Dist. LEXIS 191596, at *8 (W.D.N.C. Oct. 5, 2021) ("Subjecting an employee to internal investigations and disciplinary actions, even coupled with alleged discriminatory treatment and strained working relationships, does not constitute extreme and outrageous conduct under North Carolina law." (citation omitted)); *Thomas*, 157 F. Supp. 2d at 635 (holding that allegations of "(1) giving [plaintiff] an excessive workload compared to her co-workers; (2) requiring that [plaintiff] receive supervisor permission to attend physical therapy, while allowing white employees to attend therapy whenever they wanted; (3) failing to file paperwork on a timely basis and thereby causing [plaintiff] to stop receiving

disability payments; (4) creating a hostile work environment; and (5) discharging [plaintiff] in retaliation for exercising her rights under Title VII" were "deplorable," but they did not "rise to the level of 'extreme and outrageous' conduct"); *Smith-Price v. Charter Behavioral Health Sys.*, 164 N.C. App. 349, 355 (2004) (holding that no extreme or outrageous conduct occurred when the defendant "threatened to make accusations against" plaintiff, "threw a package of papers at plaintiff," and "filed a complaint of sexual harassment against plaintiff" because "[a]lthough defendant's behavior was undeniably churlish and ill-mannered, it [did] not rise to the level of the extreme and outrageous conduct which is required to sustain a claim for intentional infliction of emotional distress"). Accordingly, Plaintiff's allegations do not rise to the level of extreme or outrageous conduct in the employer-employee context to sustain a claim for intentional infliction of emotional distress under North Carolina law.

Further, Plaintiff's allegations that Defendants' knowledge of his mental condition caused Defendants' conduct to rise to the level of extreme or outrageous conduct is unavailing. *See O'Neill v. Henderson Cnty. Hosp. Corp.*, 2005 U.S. Dist. LEXIS 41049, at *28 (W.D.N.C. June 21, 2005) ("Even where the plaintiff is found to be particularly susceptible to emotional distress, a termination from employment, even if found unlawful, does not by itself constitute extreme and outrageous conduct.").

Accordingly, as Plaintiff's allegations do not, as a matter of law, rise to the level of extreme or outrageous conduct sufficient to support an intentional infliction of emotional

distress claim, the Court should dismiss Count X of Plaintiff's Amended Complaint with prejudice under Rule 12(b)(6).

**CONCLUSION**

For the reasons stated herein, the Court should dismiss Counts V, IX and X of Plaintiff's Amended Complaint with prejudice for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 23rd day of September, 2026.

/s/ Jeremy R. Demmitt
W. Mark Peck (NC State Bar No. 28022)
Jeremy R. Demmitt (NC State Bar No. 47691)
ROBINSON & LAWING, L.L.P.
110 Oakwood Drive, Suite 200
Winston-Salem, NC 27103
Telephone: (336) 631-8500
Facsimile: (336) 631-6999
E-Mail: mpeck@robinsonlawing.com
jdemmitt@robinsonlawing.com
Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

I hereby certify that pursuant to Local Rule 7.3(d) the word count for this brief does not exceed 6,250 words excluding the caption, signature lines, and the certificate of service as measured by Microsoft Word's word count feature.

This the 23rd day of September, 2026.

/s/ Jeremy R. Demmitt

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I caused to be served a copy of the foregoing Defendants' Brief In Support Of Motion To Dismiss Counts V, IX And X Of The Amended Complaint on the plaintiff by mailing a copy via First Class Mail addressed as follows:

Stephen Moore
6136 Pepperidge Way
Climax, NC 27233

This the 23rd day of September, 2026.

/s/ Jeremy R. Demmitt