FILED IN THIS OFFICE
SEP 24 2026
Clerk U.S. District Court
Greensboro, NC
BY

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
(Greensboro Division)

STEPHEN MOORE,
Plaintiff,

vs.

DEERE & COMPANY; and JOHN DEERE KERNERSVILLE LLC,
Defendant.

Case No.: 1:26-cv-00591

**PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS COUNTS V, IX, AND X OF THE AMENDED COMPLAINT**

## PRELIMINARY STATEMENT

1. Defendants' use of a Rule 12(b)(6) motion to delay discovery and compel a premature adjudication on the merits is procedurally impermissible, as attempting to litigate substantive factual issues at this stage violates the established scope of the rule and is contrary to controlling Fourth Circuit procedural standards. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

2. Defendants' characterization of the Amended Complaint as "verbose" intentionally misconstrues thoroughness for redundancy. The extensive nature of Plaintiff's factual allegations is a direct and necessary reflection of the volume of statutory and common-law employment violations committed by Defendants.

3. Far from failing to state a claim, the operative pleading comprehensively details the specific, threshold factual grounds establishing explicit liability for Count V (FMLA Interference), Count IX (Abuse of Process), and Count X (Intentional Infliction of Emotional Distress).

4. For clarity, "FAC" refers to First Amended Complaint.

## ARGUMENT

### FMLA Interference as a Matter of Law (Count V)

5. Plaintiff has alleged facts establishing the requisite elements of FMLA Interference. *See Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 427 (4th Cir. 2015).

6. Plaintiff was an eligible employee, his employer was covered by the statute, he was entitled to leave, and he gave proper notice (FAC ¶ 334).

7. Defendants executed an unannounced facility lockout and deactivated Plaintiff's electronic security credentials (FAC ¶ 339), directly violating 29 U.S.C. § 2614(a)(1) and 29 C.F.R. § 825.214 (FAC ¶ 340).

8. Defendants utilized administrative access to manually alter Plaintiff's official hire date to January 1, 2025 (FAC ¶¶ 141, 341-343), directly violating 29 C.F.R. § 825.220(b), which explicitly prohibits database manipulation to avoid FMLA responsibilities (FAC ¶ 344-345).

9. Because the structural effect of these database alterations and security lockouts restrained, delayed, and defeated Plaintiff's statutory rights, and directly resulted in an unauthorized erasure of his family health benefits and compensation, Plaintiff has sufficiently stated a plausible claim for FMLA interference under the *Adams* framework (FAC ¶ 346).

**Elements of Abuse of Process (Count IX)**

10. Plaintiff has alleged facts sufficient to establish the two essential elements of a common law abuse of process claim: (1) an ulterior motive, and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding. *See Stanback v. Stanback*, 297 N.C. 181, 201, 254 S.E.2d 611, 624 (1979) (FAC ¶ 392).

11. Defendants maintained and weaponized the state court process for an improper, collateral purpose unrelated to seeking legitimate legal relief. Specifically, corporate counsel explicitly documented in written correspondence that their voluntary dismissal of the Chapter 50C action was not due to an abated safety threat, but solely because corporate management felt *"the message has been sufficiently sent to Mr. Moore"* (FAC ¶ 401).

12. This documented intent is corroborated by internal corporate records proving that Manager Cota was permanently relocating over 800 miles away and faced no local safety threat (FAC ¶¶ 217, 399). Defendants utilized a protective statutory framework not to ensure physical safety, but as leverage to coerce a mutual no-contact

agreement and force Plaintiff's submission to settlement conditions (FAC ¶¶ 249, 400).

13. Defendants committed a series of willful, improper procedural acts outside the regular course of proceedings to achieve their collateral purpose. After utilizing a completed employment discharge to secure an *ex parte* emergency protective order (FAC ¶¶ 202, 393–395), and after that emergency order expired by operation of law, Defendant Deere & Company willfully intervened to revive the dead process (FAC ¶¶ 240, 396).

14. Defendants retroactively deployed this state process to justify an entirely internal, predetermined employment termination (FAC ¶ 330). They further deployed corporate defense counsel to enter an appearance solely to prolong the litigation (FAC ¶¶ 241, 397, 398), only choosing to enter a voluntary dismissal within forty-eight (48) hours of Plaintiff's insistence on mandatory discovery compliance (FAC ¶ 401).

15. Because Plaintiff's First Amended Complaint explicitly alleges both an illegitimate collateral motive and a corresponding series of

improper procedural acts, the claim fully satisfies the *Stanback* standard and survives Defendants' motion to dismiss (FAC ¶ 404).

**Intentional Infliction of Emotional Distress (Count X)**

16. Under North Carolina substantive law, the essential elements of an intentional infliction of emotional distress (IIED) claim are: (1) extreme and outrageous conduct; (2) intended to cause or recklessly causing; and (3) severe emotional distress. *See Miller v. Brooks*, 123 N.C. App. 20, 472 S.E.2d 350 (1996); Restatement (Second) of Torts § 46 cmt. f (FAC ¶ 409).

17. Under established state precedent, conduct is considered extreme and outrageous when a defendant acts despite prior knowledge that the plaintiff is peculiarly susceptible to emotional distress. An employer's prior knowledge of a subordinate's severe, clinically documented medical vulnerability is an objective factor that transforms standard personnel actions into "extreme and outrageous" conduct. See Poole v. Copland, Inc., 348 N.C. 260, 498 S.E.2d 602 (1998) (holding that a plaintiff's peculiar susceptibility to mental or emotional injury is a proper consideration in assessing liability and injury); see also Wrenn v. Byrd, 120 N.C. App. 761, 767, 464 S.E.2d

89, 93 (1995) (stating that knowledge of a plaintiff's peculiar susceptibility is relevant when assessing conduct that injures a vulnerable individual); Restatement (Second) of Torts § 46 cmt. f.

18. From August 2024 through April 2025, global corporate compliance and local management possessed explicit, continuous written notice across at least twelve distinct internal disclosures over an eight-month period detailing Plaintiff's ongoing clinical medical crises, active symptoms, objective clinical diagnoses, panic attacks, and acute hypertensive blood pressure spikes up to 150/80 (FAC ¶ 412).

19. Despite actual notice of Plaintiff's acute medical vulnerabilities, Defendants authorized and ratified a continuous course of conduct deliberately targeting those vulnerabilities (FAC ¶ 414).

20. Specifically, Defendants executed an unannounced, closed-door confinement of a vulnerable subordinate during an active medical panic emergency (FAC ¶¶ 186–189, 223).

21. Defendants subsequently executed a summary termination accompanied by immediate psychological threats of criminal arrest to bypass standard workplace safety metrics and force an unvetted corporate discharge (FAC ¶¶ 191, 199).

22. To mask retaliatory intent, Defendants initiated state court Chapter 50C litigation, misapplying the judicial process to achieve an unauthorized collateral advantage completely divorced from a legitimate protection framework (FAC ¶¶ 200, 329, 400).

23. Defendants' agents and hired counsel further issued top-down administrative communication restrictions and financial sanction threats to actively insulate corporate leadership and impede Plaintiff from pursuing direct enforcement of his civil rights (FAC ¶¶ 256, 258, 273).

24. As a direct and proximate result of Defendants' top-down ratified conduct, Plaintiff suffered a severe and diagnosable psychiatric impairment, resulting in an unbroken, multi-year chain of therapeutic medical care (FAC ¶¶ 418, 419).

25. Under North Carolina law, while an employer generally possesses an administrative privilege to discipline subordinates, this privilege is stripped when management conduct exceeds the bounds of standard workplace discipline and degenerates into a campaign of physical intimidation and intentional misconduct. *See West v. King's Department Store, Inc.*, 321 N.C. 698, 365 S.E.2d 621 (1988) (FAC ¶

415). Because the alleged actions—including forced confinement during a medical emergency and bad-faith litigation—completely transcend the scope of legitimate administrative authority, the injuries easily survive a motion to dismiss (FAC ¶ 415).

## CONCLUSION

For the foregoing reasons, Plaintiff Stephen Moore respectfully requests that this Court deny Defendants' Motion to Dismiss Counts V, IX, and X of the First Amended Complaint in its entirety, find that Plaintiff has stated plausible claims for relief under federal and state law, and order Defendants to file their formal Answer to all remaining claims within the timeframe mandated by the Federal Rules of Civil Procedure so that this matter may proceed into the civil discovery phase.

Dated: September 24 2026

Respectfully submitted,

By: ______________________

Stephen Moore, Plaintiff Pro Se
6136 Pepperidge Way
Climax, NC 27233
Phone: (336) 772-0044
Email: spmoore1@gtcc.edu

## CERTIFICATE OF SERVICE

I hereby certify that on this day, a copy of the foregoing Plaintiff's Brief in Opposition to Defendants' Motion to Dismiss Counts V, IX, and X of the Amended Complaint was served upon counsel for Defendants by depositing a true copy thereof in the United States Mail, First Class postage prepaid, and via electronic mail (email), addressed to Defendants' retained defense counsel of record as follows:

W. Mark Peck

Jeremy R. Demmitt

ROBINSON & LAWING, L.L.P.

110 Oakwood Drive, Suite 200

Winston-Salem, NC 27103

Emails: mpeck@robinsonlawing.com; jdemmitt@robinsonlawing.com

This the 24 day of September 2026.

By: ______________________

Stephen Moore, Plaintiff Pro Se