**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

**Case No.: 1:26-CV-591**

| | |
|---|---|
| STEPHEN MOORE,<br><br>Plaintiff,<br><br>v.<br><br>DEERE & COMPANY and JOHN DEERE KERNERSVILLE LLC,<br><br>Defendants. | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS COUNTS V, IX AND X OF THE AMENDED COMPLAINT** |

Defendants Deere & Company and John Deere Kernersville LLC, (collectively, "Defendants") respectfully submit this Reply Brief in Support of their Motion to Dismiss Counts V, IX and X of the Amended Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (ECF No. 12) and in response to Plaintiff's Brief In Opposition To Defendants' Motion To Dismiss Counts V, IX, and X of the Amended Complaint (ECF No. 15). As set forth in more detail below, the Court should dismiss Plaintiff's claims for Family and Medical Leave Act ("FMLA") interference (Count V), common law abuse of process (Count IX), and common law intentional infliction of emotional distress (Count X), due to his failure to state claims upon which relief can be granted.

## ARGUMENT

Plaintiff argues he has alleged facts establishing that: (1) Defendants engaged in FMLA interference when he was not restored to his same or similar position following his approved FMLA leave and by later manipulating his employment start date; (2)

Defendants' alleged involvement in a 50C proceeding for an improper collateral purpose was an abuse of process; and (3) Defendants' knowledge of Plaintiff's peculiar susceptibility to emotional distress turned Defendants' actions into extreme and outrageous conduct under a common law claim for intentional infliction of emotional distress. As described in more detail below, none of the actions taken by Defendants (1) discouraged Plaintiff or others from taking FMLA leave; (2) were taken for an improper collateral purpose; or (3) qualify as extreme and outrageous conduct.

As an initial argument, Plaintiff contends that based on *Presley v. City of Charlottesville*, 464 F.3d 480 (4th Cir. 2006), "Defendants' use of a Rule 12(b)(6) motion to delay discovery and compel a premature adjudication on the merits is procedurally impermissible, as attempting to litigate substantive factual issues at this stage violates the established scope of the rule and is contrary to controlling Fourth Circuit procedural standards." (ECF No. 15 ¶1.) However, the United States Court of Appeals for the Fourth Circuit in *Presley* stated, "when, as here, a defendant seeks [a Rule 12(b)(6)] dismissal of a civil rights complaint . . . [the Court] 'must not dismiss the complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*.'" *Id.* at 483 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999) (emphasis in original)). Thus, because it does appear to a certainty in this case that Plaintiff is not entitled to relief under any legal theory with respect to Counts V, IX and X, Defendants' motion to dismiss is consistent with the holding in *Presley.*

## I. **Plaintiff has not adequately alleged that Defendants' actions discouraged him or any other employees from taking FMLA leave.**

First, Plaintiff's reliance on *Adams v. Anne Arundel County Public Schools*, 789 F.3d 422 (4th Cir. 2015), is misplaced, because the holding in *Adams* expressly contradicts Plaintiff's position. Plaintiff mistakenly relies on *Adams* in his Response Brief for the contention that he "has alleged facts establishing the requisite elements of FMLA Interference." (ECF No. 15 ¶5.) However, the facts Plaintiff has alleged here are akin to the facts that were alleged in *Adams* that lead the court to hold the trial court's dismissal of the plaintiff's FMLA interference claim was proper.

In *Adams*, the plaintiff was employed by the defendant as an assistant principal and following an incident with Child Protective Services, the plaintiff took three separate instances of FMLA leave. *Id.* at 424-26. The plaintiff later filed a lawsuit against the defendant and asserted a claim for FMLA interference. *Id.* at 426. The plaintiff contended that the defendant "took adverse employment actions against him, which interfered with his FMLA rights by discouraging the taking of leave." *Id.* at 427. The plaintiff argued that the defendant interfered by: (1) requiring the plaintiff to submit to three medical examinations, *id.*; (2) forcing the plaintiff to attend a pre-disciplinary conference while on leave, *id.*; and (3) the defendant verbally attacking the plaintiff and a written reprimand, *id.* at 427-29. The Fourth Circuit rejected each of these grounds noting the plaintiff "was not denied FMLA leave. In fact, he took three separate medical leaves totaling well over twelve weeks. . . . [The plaintiff] has not suggested that the Board denied him any FMLA leave he requested. On the contrary, [the plaintiff] received more than the statutorily guaranteed

amount." *Id.* at 427. Accordingly, the Fourth Circuit affirmed the trial court's dismissal of the FMLA interference claim. *Id.* at 424.

Thus, *Adams* does not stand for the proposition that Plaintiff has sufficiently alleged facts to establish a FMLA interference claim. Rather, *Adams* supports Defendants' argument that Plaintiff has not sufficiently alleged a plausible claim for FMLA interference. The Amended Complaint demonstrates that Plaintiff took the FMLA leave he requested, and he has not alleged that he ever needed, requested or was denied additional FMLA leave. (*See* ECF No. 6 ¶¶88, 91.) As a result, just like the plaintiff in *Adams* left the court to speculate how the defendant's actions interfered with his FMLA leave, Plaintiff here leaves to speculation how Defendants' actions have interfered with his FMLA leave.

Second, Plaintiff mistakenly relies on the language in 29 U.S.C. § 2614(a)(1) and 29 C.F.R. § 825.214, arguing that the unannounced facility lockout and deactivation of Plaintiff's security credentials caused Plaintiff to fail to "be restored by the employer to the position of employment held by [Plaintiff] when the leave commenced[.]" 29 U.S.C. § 2614(a)(1)(A); *see also* 29 C.F.R. § 825.214 ("On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced[.]") However, as alleged in the Amended Complaint, the facility lockout and deactivation of Plaintiff's credentials happened subsequent to Plaintiff's FMLA leave and thus cannot form the basis of a FMLA interference claim. (ECF No. 6¶¶ 88, 91, 94). *See also Snipes v. Sw. Va. Reg'l Jail Auth.*, 350 F. Supp. 3d 489, 494-95 (W.D. Va. 2018)

(finding that termination in close proximity to the return from FMLA leave plausibly alleges a claim for FMLA retaliation rather than FMLA interference).

Lastly, Plaintiff argues that manually altering Plaintiff's official hire date to January 1, 2025 was a direct violation of 29 C.F.R. § 825.220(b) because 29 C.F.R. § 825.220(b) "prohibits database manipulation to avoid FMLA responsibilities[.]" (ECF No. 15 ¶8.) However, 29 C.F.R. § 825.220(b), states that "[i]nterfering with the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave" or "manipulation by a covered employer to avoid responsibilities under FMLA[.]"[1] Here, Plaintiff leaves to speculation how the alleged resetting of his hire date either discouraged him from applying for additional leave or resulted in a denied FMLA leave request. (ECF No. 15 ¶¶5-9.) Thus, there is no plausible inference, and only conjecture, that the alleged change of Plaintiff's start date was used by Defendants to "avoid responsibilities under FMLA," or otherwise interfered with Plaintiff's FMLA usage. (*See generally* ECF No. 6.)

Accordingly, Plaintiff has failed to state a claim upon which relief can be granted for FMLA interference and Count V of his Amended Complaint should be dismissed with prejudice.

---

[1] The provided examples of manipulation by a covered employer include "(1) [t]ransferring employees from one worksite to another for the purpose of reducing worksites, or to keep worksites, below the 50-employee threshold for employee eligibility under the Act; (2) [c]hanging the essential functions of the job in order to preclude the taking of leave; and (3) [r]educing hours available to work in order to avoid employee eligibility." 29 C.F.R. § 825.220(b)(1)-(3).

## II. Plaintiff's abuse of process claim fails as a matter of law because he fails to allege facts sufficient to raise a plausible inference that either defendant used the no-contact order for an improper purpose in a collateral matter.

Plaintiff relies on *Stanback v. Stanback*, 297 N.C. 181 (1979), for the proposition that he "has alleged facts sufficient to establish the two essential elements of a common law abuse of process claim: (1) an ulterior motive, and (2) a willful act in the use of the process not proper in the regular prosecution of the proceeding." (ECF No. 15 ¶10 (citing *Stanback*, 297 N.C. at 201)). Although this is an accurate recitation of the elements set forth in *Stanback*, in this case, similar to the circumstances presented in *Stanback*, the "complaint fails . . . to allege that defendant committed any wilful act not proper in the regular course of the proceeding once he initiated the suit against her." *Stanback*, 297 N.C. at 201.

Further, Plaintiff argues that "Defendants maintained and weaponized the state court process for an improper, collateral purpose unrelated to seeking legitimate legal relief." (ECF No. 15 ¶11.) Plaintiff has not made any plausible allegations that Defendants used the no-contact order for an improper purpose to a "collateral matter." *See Stanback*, 297 N.C. at 201 (explaining that the second element is satisfied through allegations that "once the prior proceeding was initiated, the defendant committed some wilful act whereby he sought to use the existence of the proceeding to gain advantage of the plaintiff in respect to some collateral matter.") Rather, all of the allegations related to the abuse of process claim that Plaintiff relies on were a part of the 50C proceeding that Lindsey Cota (not Defendants) initiated on April 29, 2025. (ECF No. 6 ¶¶195-205, 217, 227-54.) Plaintiff has

not alleged a collateral purpose for which Defendants sought to gain an impermissible advantage against Plaintiff.

To the extent that Plaintiff attempts to rely on Defendants request for a mutual no-contact agreement between Plaintiff and Lindsey Cota (ECF No. 6 ¶¶ 249-50), this argument fails. It is fundamental to an abuse of process claim that the defendant attempt to achieve "'through the use of the process some end ***foreign*** to those it was designed to effect."' *Stanback,* 297 N.C. at 201 (quoting R. Byrd *Malicious Prosecution in North Carolina*, 47 N.C.L. Rev. 285, 288 (1969) (emphasis added)). Defendants' purported attempt to secure a mutual no-contact agreement is well within the scope of a 50C civil no contact order. *See* N.C. Gen. Stat. § 50C-5(b)(5) (identifying as one potential remedy for a 50C no contact order as a requirement that "the respondent not [] contact the victim by telephone, written communication, or electronic means."). As Defendants' purported request for a mutual no-contact agreement was well within the scope of the purpose of a 50C proceeding, Plaintiff has not alleged any collateral purpose not within the scope of a 50C proceeding and Plaintiff's abuse of process claims fails as a matter of law.

Accordingly, for the reasons stated herein, Plaintiff has failed to state a claim upon which relief may be granted for Count IX for common law abuse of process and this claim should be dismissed with prejudice.

**III. Plaintiff's intentional infliction of emotional distress claim fails because Defendants' purported knowledge of Plaintiff's peculiar susceptibility did not cause Defendants' actions to rise to a level of extreme and outrageous conduct.**

Plaintiff mistakenly relies on several cases to establish that he has sufficiently alleged a common law claim for intentional infliction of emotional distress. (ECF No. 15 ¶¶ 16, 17, 25.) In his Response Brief, Plaintiff cites to *Poole v. Copland, Inc.*, 348 N.C. 260 (1998) and *Wrenn v. Byrd*, 120 N.C. App. 761 (1995) for the proposition that "[a]n employer's prior knowledge of a subordinate's severe, clinically documented medical vulnerability is an objective factor that transforms standard personnel actions into 'extreme and outrageous' conduct," (ECF No. 15 ¶17). This is a gross overstatement of the cited cases.

In *Poole*, the North Carolina Supreme Court was presented with a question regarding the thin skull rule.[2] There, the defendant had been found liable for intentional infliction of emotional distress, but the defendant contended that the trial court erred in instructing the jury "that it must find that the 'wrongful actions under the same . . . circumstances could reasonably have been expected to injure a person of ordinary mental condition' before it could hold [the corporate defendant] liable for all the harmful consequences of [the individual defendant's] action." *Id.* at 265. Thus, *Poole* addressed whether a person's medical susceptibility or vulnerability is relevant to whether a person suffered extreme emotional distress, not whether the conduct is extreme and outrageous. Accordingly, there is no linear connection from the holding in *Poole* to Plaintiff's assertion

---

[2] "The thin skull rule is the rule of law that a negligent defendant takes the plaintiff as he finds him and, therefore, is liable for the harmful consequences of his negligent act notwithstanding the fact that the damages were unusually extensive because of the plaintiff's peculiar susceptibility or pre-existing condition." *Casey v. Fredrickson Motor Express Corp.*, 97 N.C. App. 49, 53 (1990).

that an employer's knowledge of a medical vulnerability of a subordinate transforms the employer's standard actions into extreme and outrageous conduct.

Second, in *Wrenn* the North Carolina Court of Appeals analyzed a claim for negligent infliction of emotional distress rather than a claim for intentional infliction of emotional distress. *See Wrenn,* 120 N.C. App. at 764. Because *Wrenn* did not analyze a claim for intentional infliction of emotional distress, it has no bearing on this case. Even if *Wrenn* were relevant, the North Carolina Court of Appeals held that on a negligent infliction of emotional distress claim, "there is no requirement that the plaintiff, in this summary judgment proceeding, show that defendant had knowledge of her susceptibility to emotional distress." *Wrenn*, 120 N.C. App. at 767.

Lastly, Plaintiff relies on *West v. King's Department Store, Inc.*, 321 N.C. 698 (1988), in both his Amended Complaint and Response Brief, arguing that "while an employer generally possesses an administrative privilege to discipline subordinates, this privilege is stripped when management conduct exceeds the bounds of standard workplace discipline and degenerates into a campaign of physical intimidation and intentional misconduct." (ECF No. 15 ¶25; ECF No. 6 ¶415.) However, Plaintiff's reliance on *West* is misplaced because that case simply did not involve any form or workplace discipline.

In *West*, the plaintiffs were customers of the defendant, who asserted an intentional infliction of emotional distress claim when the defendant's store manager repeatedly accused them of being thieves even though they had paid for the merchandise at issue, received a receipt for the merchandise, and had a cashier verify their purchase. *Id.* at 700-

01. The North Carolina Supreme Cout held that the following "factors together constitute sufficient evidence upon which a reasonable jury could have returned a verdict in favor of the plaintiffs[:]" failing to examine the customer's receipt, repeatedly telling the customer that they stole the merchandise, informing the customer that they would be arrested if they did not return the merchandise in question, confronting the plaintiffs after receiving warning that one of them was receiving out-patient treatment and could not withstand confrontation, and plaintiffs offering proof of purchase. *West*, 321 N.C. at 705-06. The North Carolina Supreme Court further held that the store manager's conduct was extreme and outrageous because of the unique relationship between a store employee and a customer, stating "[f]ew things are more outrageous and more calculated to inflict emotional distress on innocent store customers" than "to repeatedly tell them in a loud voice in the presence of others that they stole the merchandise and would be arrested if they did not return it." *Id.* at 705 (citation omitted).

*West,* therefore, is completely inapplicable and is completely distinguishable from the facts of this case. Again, here, Plaintiff was an employee and Defendants, according to Plaintiff's Amended Complaint, the employer. (ECF No. 6 ¶¶ 2, 3.) Plaintiff has failed to cite any case or authority that contradicts the well-reasoned position that, "'it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to support a claim of intentional infliction of emotional distress.'" *Payne v. Nat'l Jewelry & Pawn, Inc.*, 1:25cv24, 2025 U.S. Dist. LEXIS 168249, at *15 (M.D.N.C. July 28, 2025) (quoting *Thomas v. Northern Telecom, Inc.*, 157 F. Supp. 2d 627, 634-35

(M.D.N.C. 2000)). Plaintiff has not alleged any facts in his Amended Complaint to sustain conduct that rises to the level of extreme and outrageous. Accordingly, Plaintiff's Count X for intentional infliction of emotional distress fails as a matter of law and should be dismissed with prejudice.

## CONCLUSION

For the reasons stated herein, the Court should dismiss Counts V, IX and X of Plaintiff's Amended Complaint with prejudice for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

This the 7th day of October, 2026.

/s/ Jeremy R. Demmitt
W. Mark Peck (NC State Bar No. 28022)
Jeremy R. Demmitt (NC State Bar No. 47691)
ROBINSON & LAWING, L.L.P.
110 Oakwood Drive, Suite 200
Winston-Salem, NC 27103
Telephone: (336) 631-8500
Facsimile: (336) 631-6999
E-Mail: mpeck@robinsonlawing.com
jdemmitt@robinsonlawing.com
Attorneys for Defendants

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I hereby certify that pursuant to Local Rule 7.3(d) the word count for this brief does not exceed 3,125 words excluding the caption, signature lines, and the certificate of service as measured by Microsoft Word's word count feature.

This the 7th day of October, 2026.

/s/ Jeremy R. Demmitt

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I caused to be served a copy of the foregoing Defendants' Reply Brief In Support Of Motion To Dismiss Counts V, IX And X Of The Amended Complaint on the plaintiff by mailing a copy via First Class Mail addressed as follows:

Stephen Moore
6136 Pepperidge Way
Climax, NC 27233

This the 7th day of October, 2026.

/s/ Jeremy R. Demmitt