IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

**Case No.: 1:26-CV-591**

| | |
|---|---|
| STEPHEN MOORE,<br><br>Plaintiff,<br><br>v.<br><br>DEERE & COMPANY and JOHN DEERE KERNERSVILLE LLC,<br><br>Defendants. | **DEFENDANTS' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR LEAVE TO FILE A SUPPLEMENTAL COMPLAINT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 15(d)** |

NOW COME Defendants Deere & Company and John Deere Kernersville LLC, (collectively, "Defendants"[1]) by and through undersigned counsel, pursuant to Federal Rule of Civil Procedure 15(d) and L.R. 7.3(f) and hereby respond to Plaintiff's Motion for Leave to File a Supplemental Complaint Pursuant to Federal Rule of Civil Procedure 15(d) (hereinafter "Motion to Supplement".) Defendants respectfully request Plaintiff's Motion to Supplement be denied on grounds that supplementation of the Amended Complaint in the manner he has requested is futile.

[1] Although in the Amended Complaint, Plaintiff refers to Defendants in the singular, alleging that at all times "Defendant Deere & Company and John Deere Kernersville LLC operated as a highly unified, single integrated employer under controlling federal standards" (ECF No. 6 ¶ 3), Defendants reserve the right to address the accuracy of this allegation at the appropriate time.

## STATEMENT OF THE FACTS AND PROCEDURAL HISTORY

Plaintiff filed his Amended Complaint on July 31, 2026, purporting to assert ten causes of action: four involving the religious discrimination and retaliation provisions of Title VII of the Civil Rights Act of 1964 (29 U.S.C. §§ 2000e et seq.) (Count I (ECF No. 6, ¶¶276-292); Count II (ECF No. 6 ¶¶293-307); Count III (ECF No. 6 ¶¶308-321); and Count IV (ECF No. 6 ¶¶322-332)); two involving the FMLA (29 U.S.C. §§ 2601 et. seq.) (Count V (ECF No. 6 ¶¶333-347) and Count VI (ECF No. 6 ¶¶348-360)); and four involving various doctrines under North Carolina common law (Count VII, wrongful discharge (ECF No. 6 ¶¶361-375); Count VIII, common law false imprisonment (ECF No. 6 ¶¶376-389); Count IX, common law abuse of process (ECF No. 6 ¶¶390-406); and Count X, intentional infliction of emotional distress (ECF No. 6 ¶¶407-419).). After being served with the Amended Complaint and Summons on August 3, 2026 (ECF No. 7), Defendants moved for and received an extension of time to answer or otherwise respond to Plaintiff's Amended Complaint by September 23, 2026 (ECF No. 8; Text Order dated August 14, 2026). On September 23, 2026, Defendants filed their Motion to Dismiss Counts V, IX and X in response to Plaintiff's Amended Complaint (*see* ECF No. 12), which the parties have fully briefed.

On October 8, 2026, Plaintiff filed his Motion to Supplement. (*See* ECF No. 17.) Plaintiff's Motion to Supplement seeks to supplement his Amended Complaint by purportedly adding a cause of action seeking relief under North Carolina's "Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. § 95-242(c) . . . ." (ECF No. 17-

1 at ¶ 4.) In so doing, Plaintiff merely "realleges and incorporates by reference each and every factual allegation contained in Paragraphs 1 through 419 of his First Amended Complaint" without further allegation, other than that on October 5, 2026, he was issued a "Right-to-Sue Notice" by the "North Carolina Department of Labor Retaliatory Employment Discrimination Bureau (REDB). . . ." (*Id.* at ¶¶ 1-2.) Plaintiff's Motion to Supplement, however, is futile because Plaintiff has failed to allege facts from which a reasonable inference can be made that Defendants engaged in any unlawful conduct in violation of REDA.

## LEGAL STANDARD

Pursuant to Rule 15(d) of the Federal Rules of Civil Procedure, "the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "[T]he standards used by a district court in ruling on a motion to amend or on a motion to supplement are nearly identical. In either situation, leave should be freely granted, and should be denied only where 'good reason exists[.]'" *Franks v. Ross*, 313 F.3d 184, 198 n.15 (4th Cir. 2002) (quoting *Walker v. United Parcel Serv.*, 240 F.3d 1268, 1278 (10th Cir. 2001)). These "good reasons" include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment,

[and] futility of amendment[.]" *Everett v. Prison Health Servs.*, 412 Fed. Appx. 604, 606 (4th Cir. 2011) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

"A proposed amendment is futile when it is 'clearly insufficient or frivolous on its face.'" *Save Our Sound OBX, Inc. v. N.C. DOT*, 914 F.3d 213, 228 (4th Cir. 2019) (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 510 (4th Cir. 1986)). "A proposed amendment is also futile if the claim it presents would not survive a motion to dismiss." *Id.* (citing *Perkins v. United States*, 55 F.3d 910, 917 (4th Cir. 1995)).

To survive a motion to dismiss for failure to state a claim, the allegations "'must be enough to raise a right to relief above the speculative level' and must provide 'enough facts to state a claim to relief that is **plausible** on its face.'" *Robinson v. Am. Honda Motor Co.*, Inc., 551 F.3d 218, 222 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (emphasis added). A claim is facially plausible only "'when the plaintiff pleads **factual content** that allows the court to draw **the reasonable inference** that the defendant is liable for the misconduct alleged.'" *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)) (emphasis added).

Although a pro se party's "pleadings should be 'liberally construed'" and such pleadings are "'held to less stringent standards than formal pleadings drafted by lawyers,'" *Wendt v. Bullard*, 5:23CT3047, 2024 U.S. Dist. LEXIS 153187, at *7-8 (E.D.N.C. Aug. 27, 2024) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), that "does not undermine the 'requirement that a pleading contain more than labels and conclusions,'" *Id.* at *8 (citing *Giarratano v. Johnson*, 521 F.3d 298, 304 n.5 (4th Cir. 2008)). *See also Melvin v. SSA*, 126

F. Supp. 3d 584, 597-98 (E.D.N.C. 2015) ("Notwithstanding the court's obligation to liberally construe a *pro se* plaintiff's allegations, however, the court cannot ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court." (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990))).

Defendants respectfully submit that allowing Plaintiff to supplement the Amended Complaint is futile because neither the Amended Complaint nor the proposed Supplemental Complaint attached to Plaintiff's Motion to Supplement state factual content that would allow for the reasonable inference Defendants engaged in wrongful conduct in violation of REDA. (*See generally* ECF No. 6 and ECF No. 17-1.) Accordingly, the Motion to Supplement should be denied.

## ARGUMENT

"The North Carolina legislature enacted REDA in order to provide workers with a method to remedy unsafe and illegal working conditions without being punished by their employer." *Delon v. McLaurin Parking Co.,* 367 F. Supp. 2d 893, 902 (M.D.N.C. 2005). Thus, in order to state a REDA claim, a plaintiff must plausibly allege: (1) the exercise of one or more rights under the enumerated statutes set forth in REDA; (2) the suffering of an adverse employment action; and (3) the alleged adverse employment action was taken **because of** the exercise of the enumerated statutory right. *Wiley v. UPS, Inc.*, 164 N.C. App. 183, 186 (2004)(emphasis added).

The enumerated statutory rights set forth in REDA are the following: (1) "Chapter 97 of the General Statutes" more commonly known as the North Carolina "Workers'

Compensation Act"; (2) "Article 2A or Article 16 of this Chapter," which are the "Wage and Hour Act" and the "Occupational Safety and Health Act of North Carolina" respectively; (3) "Article 2A of Chapter 74 of the General Statutes," which is the "Mine Safety and Health Act of North Carolina"; (4) "G.S. 95-28.1," a statute prohibiting employment discrimination due to a person possessing sickle cell trait or hemoglobin C trait; (5) "Article 16 of Chapter 127A of the General Statutes," which addresses National Guard reemployment rights; (6) "G.S. 95-28.1A," which prohibits employment discrimination based on genetic testing or genetic information; (7) "Article 52 of Chapter 143 of the General Statutes," which addresses misuse of pesticides and other insecticides; (8) "Article 5F of Chapter 90 of the General Statues," commonly known as the "Drug Paraphernalia Control Act of 2009;" (9) compliance with "Article 27 of Chapter 7B of the General Statutes," which addresses parental responsibilities for juveniles who are adjudicated delinquent; and (10) "Exercise rights under Chapter 50B," which relates to the seeking of protection from domestic violence. N.C. Gen. Stat. § 95-241 (2026). To prevail at the Motion to Dismiss stage, a plaintiff must allege facts from which an inference can be made that retaliatory motive was a substantial factor in the adverse employment action taken by the employer. *See generally*, *Wiley v. UPS,* 102 F. Supp. 2d 643, 650 (M.D.N.C. 2009). Indeed, REDA does not prohibit the termination of an employee who has filed or participated in a statutorily enumerated right; rather, it prohibits discharges and other adverse employment actions *because* the employee exercises the statutorily enumerated right. *See id*. (emphasis added.)

Here, the only enumerated statutory right mentioned in the Amended Complaint is Plaintiff's passing references in a handful of paragraphs to documents filed in his workers' compensation claim. (*See* ECF No. 6 at ¶¶ 34, 122-123, 125-130.) However, a careful review of these specific allegations and the documents attached and referenced therein show Plaintiff has not alleged any facts from which an inference can be made that Defendants retaliated against him because he pursued a workers' compensation claim. (*Id*.; *see also* ECF No. 6-7.)

In Paragraph 34 of the Amended Complaint, Plaintiff references an EDI Form 19 (Employer's Report of Employee's Injury or Occupational Disease to the Industrial Commission) but does so not in the context of an alleged REDA action, but in the context of his religious discrimination claim by alleging that Defendants "explicitly admit[]" to his being ordered to "remove" the "religious apparel" referenced in the preceding paragraph. (*Id*. ¶¶ 33, 34; and ECF No. 6-7.) Similarly in Paragraphs 122 and 123 of the Amended Complaint, Plaintiff alleges Defendants "utilized variant entity entries" in the EDI Form 19, and further that Defendants alleged in the EDI Form 19 they "*first knew of injury*" on October 1, 2024. (ECF No. 6 ¶¶ 122-123 (emphasis in original).) Yet again, Plaintiff does so not in the context of an alleged REDA violation, but rather to support a subsequent allegation made in Paragraph 124 that Defendants "knew" of his alleged injury approximately five weeks earlier "on August 22, 2024." (*Id.* ¶ 124.)

Paragraph 125 of the Amended Complaint again references the EDI Form 19, this time in the context of his FMLA interference claim in support of an allegation that "Plaintiff

was away on an approved medical absence dating back to August 2024." (*Id.* ¶ 125.) Lastly, Paragraphs 126 through 130 of the Amended Complaint are devoted to statements alleged to be attributed to Defendants in an Industrial Commission Form 61 (Denial of Workers' Compensation Claim) and an Order entered by the North Carolina Industrial Commission on September 18, 2025 wherein Defendant Deere & Company and its workers' compensation insurance carrier were sanctioned $400.00 for their failure to comply with North Carolina General Statute Section 97-18(j), a provision of the North Carolina Workers' Compensation Act.[2] (*Id.* ¶¶ 126-130; ECF No. 6-7.) There simply is no reference in any of these allegations or the documents themselves from which an inference can be made that Defendants engaged in any form of adverse action against Plaintiff because of his pursuit of a workers' compensation claim.

Defendants submit, the only inferences that can be made from the bare allegations in the Amended Complaint regarding Plaintiff's workers' compensation claim, and the allegations in the Supplemental Complaint are that: (a) Plaintiff filed a workers' compensation claim; (b) an EDI Form 19 filed with the North Carolina Industrial Commission contains factual errors; (c) Defendants' denied Plaintiff's workers' compensation claim; (d) Defendant Deere & Company and its workers' compensation carrier were sanctioned by the North Carolina Industrial Commission for not timely

---

[2] Section 97-18(j) allows for "reasonable sanctions" against an employer or insurer who does not within 30 days after receiving notice of an alleged workplace injury either accept the claim, deny the claim, or accept the claim without prejudice while the claim remains under investigation. *See* N.C. Gen. Stat. § 97-18(j).

denying Plaintiff's claim; and (e) Plaintiff filed a REDA action and received a Right to Sue Notice from the North Carolina Department of Labor Retaliatory Employment Discrimination Bureau. (*See generally,* ECF No. 6 ¶¶ 33-34, 122-130; ECF No. 6-7, ECF No. 17, and ECF No. 17-1.) Plaintiff simply makes no factual allegation from which a causal nexus can be inferred that any employee or agent of Defendants engaged in any adverse employment action against him due to his filing or pursuing a workers' compensation claim. (*Id.)* Plaintiff leaves to speculation who engaged in an adverse employment action, what adverse employment action was taken, and how the action may be related to his filing of a workers' compensation claim. Plaintiff has not alleged facts from which an inference can be made that retaliatory motive for filing a workers' compensation claim was a substantial factor in any adverse employment action taken by Defendants, making futile his request to supplement the Amended Complaint.

Equally futile is any argument that a retaliatory motive can be inferred from the timing of Plaintiff's pursuit of a workers' compensation claim in October 2024 and his termination in April 2025, to the extent that Plaintiff contends termination was the adverse employment action taken against him. Plaintiff's workers' compensation claim was filed on October 25, 2024 (*see* ECF No. 6-7 at 1) and it was denied on November 5, 2024 (*id.* at 2). Plaintiff was terminated more than 5 months later, on April 29, 2025. (*See* ECF No. 6 at ¶ 191.) Although Plaintiff alleges his termination was "in direct retaliation for his protected opposition to ongoing religious discrimination" (*see id. at* ¶ 325) and that the "direct causal nexus between Plaintiff's [exercise of this] protected activity and his

termination is established by the intense temporal proximity between the expiration of the EEOC Position Statement deadline on April 8, 2025" (*see id. at* ¶ 331), he makes no such allegation regarding the timing of his termination and the filing of his workers' compensation claim. (*See generally* ECF No. 6, ECF No. 17, and ECF No. 17-1.) Indeed, courts have consistently held a period of more than two and one-half months between the exercise of a statutorily enumerated right and an alleged adverse employment action constitutes the absence of the close temporal proximity required to make a *prima facie* cause of action under REDA. *See Brown v. Sears Auto. Ctr.*, 222 F. Supp. 2d 757, 764 n.10 (M.D.N.C. 2002) (explaining that a period of three months was insufficient to solely establish the necessary causal connection for a REDA violation); *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 691-92 (2003) (holding that a period of approximately eighty-one days was insufficient to infer wrongful conduct under REDA); *see also Shaffner v. Westinghouse Elec. Corp.*, 101 N.C. App. 213, 216 (1990) (holding that there was no close temporal connection between the charge and termination over a period of two and one-half to three months under REDA's predecessor statute.)

Accordingly, as Plaintiff's allegations in the Amended Complaint (EFC No. 6) and in his Supplemental Complaint (ECF No. 17-1) as a matter of law fail to state a claim for which relief can be granted under REDA, it would be futile to allow him to supplement the Amended Complaint under Rule 15(d).

## CONCLUSION

For the reasons stated herein, the Court should deny Plaintiff's Motion for Leave to File a Supplemental Complaint Pursuant to Federal Rule of Civil Procedure 15(d).

This the 29th day of October, 2026.

/s/ W. Mark Peck
W. Mark Peck (NC State Bar No. 28022)
Jeremy R. Demmitt (NC State Bar No. 47691)
ROBINSON & LAWING, L.L.P.
110 Oakwood Drive, Suite 200
Winston-Salem, NC 27103
Telephone: (336) 631-8500
Facsimile: (336) 631-6999
E-Mail: mpeck@robinsonlawing.com
jdemmitt@robinsonlawing.com
Attorneys for Defendants

**CERTIFICATE OF COMPLIANCE WITH WORD COUNT**

I hereby certify that pursuant to Local Rule 7.3(d) the word count for this brief does not exceed 6,250 words excluding the caption, signature lines, and the certificate of service as measured by Microsoft Word's word count feature.

This the 29th day of October 2026.

/s/ W. Mark Peck

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I caused to be served a copy of the foregoing Defendants' Response and Memorandum of Law in Opposition to Plaintiff's Motion for Leave to File a Supplemental Complaint Pursuant to Federal Rule of Civil Procedure 15(d) on the plaintiff by mailing a copy via First Class Mail addressed as follows:

Stephen Moore
6136 Pepperidge Way
Climax, NC 27233

This the 29th day of October 2026.

/s/ W. Mark Peck